Filed 8/27/20  Navarro v. Chavez CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JOSHUA NAVARRO, | B293307 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC642542) |
| v. | |
| NALINA DESTINY CHAVEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christopher K. Lui, Judge.  Affirmed.

Anderson, McPharlin & Conners, Colleen A. Déziel and Peter B. Rustin for Defendant and Appellant.

Garcia & Phan, Juan D. Garcia and Robert Nicholas Phan for Plaintiff and Respondent.

_____

Nalina Destiny Chavez moved to vacate a default and default judgment pursuant to Code of Civil Procedure section 473.5,[1] claiming she had lacked actual notice of the lawsuit. On appeal from the superior court's denial of that motion, Chavez abandons that argument and contends for the first time the court erred in failing to vacate the judgment based on equitable grounds of extrinsic fraud or mistake. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Navarro's Complaint and Entry of Default*

On December 22, 2014 Chavez rear-ended a truck while driving on the freeway. Joshua Navarro was a passenger in the truck and sustained injuries.

On December 2, 2016 Navarro sued Chavez for negligence, seeking damages in an amount according to proof at trial but in any event in excess of the jurisdictional amount of $25,000.

On January 30, 2017 Navarro filed a request for entry of default after Chavez failed to file a responsive pleading. The clerk of the court entered Chavez's default the same day.

2. *The Default Judgment*

On November 2, 2017 Navarro filed a request for entry of a default judgment in the amount of $1.2 million. Navarro included in his supporting papers his declaration, medical records and a statement of damages, claiming $900,000 in general damages ($800,000 for pain and suffering plus $100,000 for emotional distress) and more than $300,000 in special damages ($50,000 for past medical expenses, $100,000 for future medical expenses, $100,000 for loss of future earnings and $60,000 for loss of earnings to date). Navarro stated he suffered painful and

---

[1] Statutory references are to this code.

2

long-lasting injuries to his neck and back that interfered with his ability to return to work or engage in everyday activities with his young children.

On November 2, 2017 the superior court entered judgment for Navarro for $430,000.

3. *Chavez's Motion for Order Vacating Default and Default Judgment*

On July 11, 2018 Chavez moved to vacate the default and default judgment pursuant to section 473.5, claiming she lacked actual notice of the lawsuit.[2] In her declaration supporting the motion, Chavez insisted she had not known about, and had never been served with, the summons or complaint or any document relating to the default or default judgment. Chavez stated that on December 2, 2016, when the lawsuit was filed, and November 2, 2017, when the request for entry of default

---

[2] Section 473.5, subdivision (a), provides, "When service of summons has not resulted in actual notice to a party in time to defend the action and a default or default judgment has been entered against him or her in the action, he or she may serve and file a notice of motion to set aside the default or default judgment and for leave to defend the action." Subdivision (b) requires the motion to be accompanied by "an affidavit showing under oath that the party's lack of actual notice in time to defend the action was not caused by his or her avoidance of service or inexcusable neglect." If the trial court finds the party's lack of actual notice was not caused by his or her avoidance of service or inexcusable neglect, the court "may set aside the default or default judgment on whatever terms as may be just and allow the party to defend the action." (§ 473.5, subd. (c); see *Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 861; *Anastos v Lee* (2004) 118 Cal.App.4th 1314, 1319.)

judgment was filed, "I resided at 8978 Virginia Ave. South Gate CA 90280."

Chavez's counsel, Jennifer S. Leeper, an employee of State Farm's legal department, asserted in a supporting declaration that Navarro's counsel, Robert Phan, had been negotiating a settlement with State Farm and never informed the company that Navarro had filed the lawsuit, let alone obtained a default. In fact, according to Leeper, State Farm only became aware of the lawsuit on June 28, 2018 when Phan sent a copy of the default judgment to State Farm and demanded State Farm pay the judgment amount to avoid a lawsuit. Leeper continued, "This demand and threat[] to sue State Farm comes as a complete surprise given State Farm's attempts to settle this matter." Leeper included a March 21, 2017 letter from Phan to a State Farm claims' specialist asking the company to have Chavez sign and return an enclosed declaration attesting that she had no other pertinent insurance policies "in order to settle this case for the policy amount. Please also include a copy of the policy." Chavez signed the declaration as requested on April 4, 2017 and returned it to State Farm. A June 15, 2017 letter from State Farm to Phan stated, "Please let me know if the claim for Mr. Navarro has been settled and if I can forward the draft for $50,000 to your office." According to Leeper, Phan's correspondence with State Farm abruptly ceased without explanation. Despite multiple attempts to reach him for nearly a year, State Farm did not hear further from Phan until he sent State Farm the demand to pay the default judgment amount.

4. *Navarro's Opposition to Chavez's Motion*

Navarro opposed Chavez's motion, challenging her claim she lacked actual notice of the lawsuit. Navarro included the

4

sworn declaration of process server Mark Najera attesting that, on December 12, 2016, he personally served Chavez with the summons and complaint at her residence at 8978 Virginia Avenue in South Gate, the same address Chavez identified as her residence in her motion and supporting declaration. Phan similarly stated in his accompanying declaration all default-related documents had been served by mail to the same Virginia Avenue address.

In addition, emphasizing language in State Farm's March 23, 2017 letter to Chavez that Navarro's counsel had expressed "interest[] in resolving this matter versus continuing with litigation," Navarro claimed State Farm was "fully aware" of the lawsuit. (In reply Chavez argued the letter referred to potential, rather than ongoing, litigation.)

As for settlement negotiations, Phan explained he had sent State Farm a letter on July 20, 2015 with a policy limits demand. When State Farm refused to disclose the policy limits in its response to that demand letter, on December 2, 2016 Phan filed a lawsuit on behalf of Navarro in superior court.[3]

On December 19, 2016 State Farm offered in writing to settle Navarro's claims for $50,000. State Farm did not state that $50,000 represented the policy limits. In light of an existing workers' compensation lien and Navarro's "extensive injuries," Navarro did not accept the settlement offer. When Chavez failed to respond to Navarro's complaint, on January 30, 2017 Navarro requested, and obtained, entry of default against Chavez. Phan did not address Leeper's allegations that Phan had continued

---

[3] Navarro had only until December 22, 2016 to file her personal injury lawsuit absent a tolling agreement (§ 335.1), a fact Leeper surely must have known.

5

negotiating with State Farm up until April 2017, after he obtained the default, without revealing the lawsuit or default.

5. *Chavez's Reply, Navarro's Objections and Sur Reply*

In her reply Chavez provided a second supporting declaration, this time claiming "there is one long driveway for several homes on my street and, therefore, there are several houses with the address '8978 Virginia Ave.' in South Gate." (Italics omitted.) Chavez stated the residents of those homes included young adult Hispanic women that physically resembled her. In addition, while she once had lived at "one of the houses" located at the Virginia Avenue address, she had moved out in August 2016 to various other residences, including a motel and her mother's residence. She explained, "During this period of economic uncertainty I considered our family to be homeless." She continued to receive "some but not all of my mail from 8978 Virginia Ave." during this time. She, her husband and their child returned to live at the Virginia Avenue address "earlier this year."

Chavez also stated in her second declaration that she had signed the form State Farm provided to her confirming the lack of other insurance policies and presumed that Navarro and Phan "would keep their word and this matter would be settled." She did not know of the summons and complaint, entry of default or the default judgment until her State Farm counsel informed her in July 2018 that a default judgment had been entered against her.

Navarro objected to Chavez's second declaration, insisting it contradicted her first declaration attesting to her address at Virginia Avenue during the relevant period. With leave of court to file a sur reply, Navarro also provided a declaration from

6

Najera that the 8978 Virginia Avenue residence was located in a front-back duplex, the address of the front house was 8976 Virginia Avenue, and the address of the back house was 8978 Virginia Avenue. Najera confirmed he personally served Chavez at the back house associated with the 8978 address. Navarro also provided images from Google Maps indicating there was only one building on Virginia Avenue in South Gate with the 8978 address and it was part of a duplex.

6. *The Court's Order Denying Chavez's Motion*

After hearing argument and taking the matter under submission, the court denied Chavez's motion. Citing Najera's declaration establishing service of the summons and complaint, the court ruled Chavez had failed to carry her burden under section 473.5 to demonstrate she lacked actual notice of the lawsuit not attributable to inexcusable neglect or avoidance of service.

Chavez filed a timely notice of appeal.

## DISCUSSION

Section 473.5, subdivision (a), authorizes a court to set aside a default when service of a summons has not resulted in actual notice to a party in time to defend the action. Chavez does not contend the court erred in concluding she had failed to carry her burden to demonstrate a lack of actual notice under section 473.5. Rather she now argues the court abused its discretion in failing to vacate the default on the equitable grounds of extrinsic fraud or mistake. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980-981, 984 (*Rappleyea*) [even when statutory relief from default is unavailable, superior court enjoys inherent power to vacate a default on equitable grounds

7

"in exceptional circumstances," such as when default was result of extrinsic mistake or fraud; court's denial of equitable relief is reviewed for abuse of discretion]; *Pittman v Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1024 [same].) Because Chavez did not make this argument to the trial court, it is forfeited. (See *Sea Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 [issues not raised in trial court cannot be raised for first time on appeal]; *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997 [same].)[4]

While recognizing that she did not assert the specific ground of extrinsic fraud or mistake, Chavez argues she plainly averred that Navarro's counsel had failed to disclose the lawsuit to State Farm during their settlement negotiations. Chavez likens this case to *Lasalle v. Vogel* (2019) 36 Cal.App.5th 127 (*Lasalle*). There, the plaintiff (Lasalle) sued her former attorney (Vogel) for legal malpractice and served her complaint on Vogel on March 3, 2016. On April 7, 2016 Lasalle's attorney sent Vogel both an email and letter informing Vogel the time for filing a responsive pleading was "past due" and threatening to request entry of Vogel's default "unless he received a responsive pleading by the close of business the next day, Friday April 8." Failing to receive any response, Lasalle's counsel filed a request for entry of default the following Monday, on April 11, 2016 and obtained the

---

[4]     A single line in Chavez's moving papers that "equity and public policy favor trying this case on the merits" is a far cry from an argument for equitable relief based on the specific grounds of extrinsic fraud or mistake. Nowhere in her notice of motion, motion or supporting memorandum did Chavez identify extrinsic fraud or mistake as a basis for relief.

8

default at 4:05 p.m. that afternoon. At 5:22 p.m. the same day, Vogel emailed Lasalle's counsel requesting an extension. When that overture failed, she retained an attorney by Friday, April 15, 2016 and immediately moved to vacate the default and attached her answer to the complaint. Vogel explained in her accompanying declaration that she had received the summons and complaint and had been in the process of obtaining representation in Lasalle's action when the default was taken. (*Id.* at pp. 131-132 & fn. 4.) The superior court denied Vogel's motion to vacate the default; and Lasalle subsequently obtained a default judgment in the amount of $1 million. (*Id.* at p. 132.)

On appeal the court reversed the judgment and the order denying Lasalle's motion to vacate the default. Citing Lasalle's "unreasonably short" one-day notice to Vogel of her intent to obtain a default, Vogel's response within days after receiving notice, her good faith explanation for the delay and the absence of any prejudice considering the brief time between the default and Vogel's response, the court held the superior court had abused its discretion in failing to set aside the default. (*Lasalle, supra,* 36 Cal.App.5th at pp. 140-141.)

Relying on language in *Lasalle* lamenting the systemic decline of civility in the legal profession that has led attorneys to substitute "scorched-earth" tactics for professional courtesies,[5] Chavez claims Phan engaged in similar unprofessional tactics,

---

[5] The Court of Appeal observed that lawyers have "heard the mantra so often unthinkingly repeated that, 'This is a business,' that they have lost sight of the fact the practice of law is *not* a business[,] [i]t is a profession[,] [a]nd those who practice it carry a concomitantly greater responsibility than businesspeople." (*Lasalle, supra,* 36 Cal.App.5th at p. 134.)

9

crossing an ethical line, if not a legal one, to obtain a "stealthy default."

The situation in *Lasalle* was vastly different from the instant case. In *Lasalle* the defendant immediately asked counsel for a few days' extension, which was refused, and then promptly sought discretionary relief from default under Section 473. Under those circumstances, the *Lasalle* court recognized, all doubts are to be resolved in favor of relief. (*Lasalle, supra,* 36 Cal.App.5th at p. 134, citing *Rappleyea*, at p. 980 [because the law favors resolution of cases on their merits, any doubts about application of section 473 are to be resolved in favor of relief from default].) Where there is no longer a statutory basis for relief, the "strong public policy in favor of the finality of judgments" prevails in all but "exceptional circumstances." (*Rappleyea, supra*, 8 Cal.4th at pp. 981-982 ["'When relief under section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court. Beyond this period there is a strong public policy in favor of the finality of judgments and only in exceptional circumstances should relief be granted'"].)

As discussed, Chavez did not assert in the trial court an equitable basis to set aside the default. But, even if she had, she failed to show the type of "exceptional circumstances" that would warrant relief. Because Chavez had notice of the lawsuit and default-related documents, it cannot be said that the default was "stealthily" obtained. Whatever failure of communication there may have been between State Farm and Navarro's counsel, or between State Farm and Chavez, for that matter, the court did not abuse its discretion in denying Chavez's motion.

10

## DISPOSITION

The judgment is affirmed.  Navarro is to recover his costs on appeal.


PERLUSS, P. J.

We concur:


FEUER, J.


DILLON, J.[*]

---

[*] Judge of the Superior Court of the County of Los Angeles, appointed by the Chief Justice pursuant to article VI, section 6 of the California Constitution.